IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| ARDRA HARRIS, | : | |
| | : | JURY TRIAL DEMANDED |
| Plaintiff, | : | |
| | : | |
| vs. | : | Civil Action No. _____ |
| | : | |
| AMERICANWORK, LLC formerly | : | |
| known as Americanwork, Inc., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## COMPLAINT

Plaintiff Ardra Harris ("Harris") brings this Complaint against Defendant Americanwork, LLC formerly known as Americanwork, Inc. (hereinafter "Americanwork" or "Defendant") and shows this Court as follows:

## Introduction

1.

This is a Fair Labor Standards Act action in which Plaintiff seeks to recover overtime pay for all overtime hours worked. Defendant owns and operates a business that provides residential care for individuals suffering with mental disabilities. Defendant employed Harris as a Residential Case Manager, Lead Staff and Facility Manager. Harris regularly worked more than 40 hours per week. Defendant failed to compensate Harris at one-and-one-half times her regular hourly rate for all time worked in excess of forty (40) hours during each work week.

**Jurisdiction and Venue**

2.

This Court has subject-matter jurisdiction over the present action pursuant to Article III, § 2 of the United States Constitution, 29 U.S.C. § 216(b), and 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

3.

Venue properly lies in the Middle District of Georgia under 28 U.S.C. § 1391 because Defendant Americanwork, LLC is located in this judicial district; and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

**The Parties**

4.

Harris resides within Dougherty County, Georgia.

5.

Harris worked for Americanwork from April 2017 through March 9, 2020.

6.

Americanwork is a foreign limited liability company organized under the laws of the State of Delaware.

7.

Americanwork is registered to do business in the State of Georgia.

8.

Americanwork is subject to the personal jurisdiction of this Court.

9.

Americanwork may be served with process through its registered agent, Corporation Service Company, 40 Technology Parkway South, #300, Norcross, Georgia 30092.

**FLSA Enterprise Coverage**

10.

At all times relevant from June 2019 through January 2020, through the date of filing of this action (hereinafter "the Relevant Time Period"), Americanwork has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A)(i) and (ii) and (s)(1)(B).

11.

Throughout the Relevant Time Period, two or more employees of Americanwork handled materials used by the company for its business purposes including, but not limited to, residential and office furniture, phones, computers, and office supplies.

12.

Throughout 2019, Americanwork employed two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

13.

Throughout 2020, Americanwork employed two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

14.

Throughout 2019, Americanwork had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

15.

Throughout 2020, Americanwork employed two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

16.

In 2019, Americanwork had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

17.

In 2020, Americanwork had or is expected to have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

18.

Americanwork is an enterprise engaged in commerce pursuant to 29 U.S.C. §203(s)(1)(B) as it is engaged in the operation an institution primarily engaged in

the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution.

## FLSA Individual Coverage

19.

Throughout the Relevant Time Period, Harris was "engaged in commerce" as an employee of Americanwork within the meaning of 3(s)(1(A) and (B).

## Employment Status

20.

Throughout the Relevant Time Period, Harris was an "employee" of Americanwork within the meaning of 29 U.S.C. § 203(e)(1).

21.

Throughout the Relevant Time Period, Americanwork was an "employer" of Harris within the meaning of 29 U.S.C. §203(d).

## Harris' Non-Exempt Status

22.

Throughout the Relevant Time Period, Harris was not exempt from the maximum hour requirements of the FLSA by reason of any exemption set forth in 29 U.S.C. § 213.

23.

Throughout the Relevant Time Period, Harris was not employed by Americanwork in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

24.

Throughout the Relevant Time Period, Harris was not employed by Americanwork in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

25.

Throughout the Relevant Time Period, Harris was not employed by Americanwork in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

26.

Throughout the Relevant Time Period, Harris was not employed by Americanwork in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

27.

At all times during the Relevant Time Period, Harris did not exercise independent judgment and discretion in making significant business decisions on behalf of Americanwork.

28.

Throughout the Relevant Time Period, Americanwork exercised significant, if not total control over the amount of Harris' pay.

29.

Throughout the Relevant Time Period, Americanwork exercised significant, if not total control over Harris' work hours.

30.

Throughout the Relevant Time Period, Americanwork exercised significant control over the manner in which Harris' work was performed.

31.

Throughout the Relevant Time Period, Harris was required to adhere to policies, protocols and procedures created and enforced by Americanwork.

32.

During the Relevant Time Period, Harris followed a protocol set by Americanwork when interacting with Defendant's consumers (residents at the group home).

33.

During the Relevant Time Period, Harris' discretion in making decisions was limited and circumscribed by the policies and procedures set out by Americanwork.

**Additional Factual Allegations**

34.

At all times material hereto, the facility in which Harris performed her duties housed two or more, non-related individuals.

35.

At all times material hereto, Americanwork received payment for the services it provided to the consumers living at the facility in which Harris performed her duties.

36.

At all times relevant to this matter, Americanwork employed Harris at two adjacent residences that housed individuals with severe and persistent mental illnesses located at 124 Winding Way, Leesburg, GA 31763.

37.

From April 2017 through October 2018, Americanwork employed Harris as a residential case manager on a part-time basis.

38.

From April 2017 through October 2018, Harris' duties included, but were not limited to, working with individuals with severe and persistent mental illness to prepare them for independent living, including teaching them life skills such as cooking, housekeeping, laundering, food purchasing, budgeting, hygiene, medication management, coping skills, and social skills; and monitoring and reporting consumers' behaviors, needs and progress.

39.

From approximately November 2018 through August 15, 2019, Americanwork employed Harris as a lead staff member.

40.

From approximately November 2018 through March 2019, Americanwork employed Harris as a lead staff member on a part-time basis.

41.

From approximately early April 2019 through August 15, 2019, Americanwork employed Harris as a lead staff member on a full-time basis.

42.

From approximately November 2018 through August 15, 2019, Harris continued to perform the same duties she performed as a residential case manager but also performed additional duties including, but not limited to, handling the general needs of the home;  making sure medications were properly notated in the "MAR" medical records; making sure consumers were meeting the care plans; and reading and using staff notes to write weekly progress notes to bill for services received by consumers.

43.

From approximately August 16, 2019 through February 7, 2020, Americanwork employed Harris as an Intensive Residential PCH Manager on a full-time basis.

44.

From approximately August 16, 2019 through February 7, 2020, Harris' previous position as lead staff was left vacant.

45.

From approximately  August 16, 2019 through February 7, 2020, Harris
continued to perform the same duties she performed as a residential case manager
and as a lead staff member but also performed additional duties including, but not
limited to, assessing and  transitioning consumers in and out of the facility;
completing chart information; completing preliminary treatment plans upon intake
of new consumers; maintaining consumers' records; writing weekly progress
notes; approving staff notes on consumers; maintaining employees' charts; making
sure that the homes followed set policies and procedures; creating staff schedules;
addressing and reporting consumer and facility issues as needed; remaining on call
24 hours a day, 7 days per week to address staff and consumer issues; and covering
shifts for staff that were unable to cover their own shifts for any reason.

46.

From February 8, 2020 through March 9, 2020, Americanwork again
employed Harris as a residential case manager on a part-time basis**.**

47.

From June 2019 through January 2020, Harris worked in excess of 40 hours
during most, if not all, work weeks.

48.

From June 2019 through January 2020, Harris regularly worked 50-60 hours
during most, if not all work weeks.

49.

Throughout the Relevant Time Period, Defendant required that Harris submit time sheets every two (2) weeks for payroll.

50.

Throughout the Relevant Time Period, Harris submitted her time sheets every two (2) weeks to Director, Jennifer Culp.

51.

Throughout the Relevant Time Period, Jennifer Culp often stated that overtime would not be compensated.

52.

Throughout the Relevant Time Period, Ms. Culp preapproved overtime hours worked by Harris on a few occasions for "shift work".

53.

Throughout the Relevant Time Period, Ms. Culp told Harris that she should use flex time to avoid working overtime.

54.

Throughout the Relevant Time Period, Harris could not use flex time due to the lack of staff and because she was required to complete her assigned tasks as a full time lead staff member and as the Intensive Residential PCH Manager in addition to continuing to cover vacant shifts and/or shifts for which other employees were unable to work.

55.

Throughout the Relevant Time Period, when Harris covered shifts or performed "shift work" for other employees, Defendant required her to document that time.

56.

Throughout the Relevant Time Period, when Harris covered shifts for other employees, Defendant often only compensated her for the shift work she performed and not for the additional time she worked in her positions as a lead staff  and as Intensive Residential PCH Manager.

57.

Throughout the Relevant Time Period, Defendant was aware that Harris was working in excess of her scheduled working hours including completing her assigned tasks; covering shifts for other employees; completing tasks that had not been performed or properly executed by other employees; and handling calls after her scheduled working hours which, at times, included returning to the residential home to address issues with employees and residents.

58.

Throughout the Relevant Time Period, Harris had daily telephone communications with Ms. Culp wherein they talked about occurrences at the residence both regarding residents and other employees; and the tasks she was performing.

59.

Beginning in or about July 2019 and continuing throughout the Relevant Time Period, Harris had numerous communications with Ms. Culp both by email and during verbal conversations wherein Harris advised Ms. Culp of the additional tasks she was performing; the additional hours she was working; the lack of staff; the need for reliable employees; staff's refusal to perform assigned tasks leaving Harris to complete those tasks;  and errors made by staff that Harris was required to rectify.

60.

Throughout the Relevant Time Period, Americanwork was aware of the approximate number of hours that Harris worked during each work week due to her daily communications with Ms. Culp and because she was seen at the group homes working excessive hours.

61.

Americanwork was aware that Harris worked in excess of 40 hours during most, if not all, work weeks from June 2019 through January 2020.

62.

At all times during her employment with Defendant, Americanwork compensated Harris at an hourly pay rate.

63.

At times during the Relevant Time Period, Americanwork compensated Harris at her regular rate of pay (*i.e.* straight pay) for some, but not all, hours she worked in excess of 40 hours in a work week.

64.

During the Relevant Time Period, Americanwork often truncated the actual hours Harris worked in excess of 40 hours during each work week to avoid paying her overtime wages for all overtime hours worked.

65.

For example, during pay period ending August 31, 2019, Harris notated 140 hours on her time sheet for a two-week work period and Jennifer Culp altered that time record to falsely report only 95 hours worked.

66.

During pay period ending August 31, 2019, Americanwork truncated the actual hours Harris worked and failed to pay her an overtime premium (or any amounts) for the eliminated hours she worked in excess of 40 hours during this pay period.

67.

From April 2017 through June 2019, Americanwork compensated Harris at an hourly rate of $10.20.

68.

From July 2019 through August 15, 2019, Americanwork compensated Harris at an hourly rate of $10.40.

69.

From August 16, 2019 through February 7, 2020, Americanwork compensated Harris at an hourly rate of $14.00.

70.

From February 8, 2020 through March 9, 2020, Americanwork compensated Harris at an hourly rate of $13.00.

71.

Throughout the Relevant Time Period, Defendant knew or should have known that the FLSA applied to Harris.

72.

Throughout the Relevant Time Period, Defendant knew or should have known that Section 7 of the FLSA required that Defendant compensate Harris at one–and–one–half times her regular hourly rate for work performed in excess of forty hours in a workweek.

73.

Throughout the Relevant Time Period, Defendant failed to compensate Harris at one-and-one-half times her regular hourly rate for all hours worked in excess of 40 hours during any work week.

74.

Throughout the Relevant Time Period, Defendant willfully failed to compensate Harris at one-and-one-half times her regular hourly rate for all hours worked in excess of 40 hours during any work week.

75.

Upon information and belief, Defendant did not rely on the advice of legal counsel in deciding that it would not compensate Harris for all work she performed in excess of 40 hours during each work week.

76.

Upon information and belief, Defendant did not rely on any opinion, rule, or regulation propounded by the U.S. Department of Labor in deciding that it would not compensate Harris for all work she performed in excess of 40 hours during each work week.

## COUNT I–Failure to Pay Overtime

77.

The allegations in all previous paragraphs above are incorporated as if fully set out in this paragraph.

78.

Throughout the Relevant Time Period, Harris has been an employee covered by the FLSA and entitled to the overtime protections set forth in 29 U.S.C. § 207(a).

79.

Throughout the Relevant Time Period, Harris regularly worked in excess of 40 hours each week.

80.

Throughout the Relevant Time Period, Defendant failed to compensate Harris at one and one-half times her regular hourly rate for work in excess of 40 hours during each work week, in violation of 29 U.S.C. § 207.

81.

Harris is entitled to payment of due but unpaid overtime in an amount to be determined at trial, in accordance with 29 U.S.C. § 216(b).

82.

Defendant's failure to compensate Harris in accordance with 29 U.S.C. § 207, was willful within the meaning 29 U.S.C. § 255.

83.

Defendant's failure to compensate Harris in accordance with 29 U.S.C. § 207 was not made in "good faith" within the meaning of 29 U.S.C. §§ 259 or 260.

84.

As a result of the underpayment of overtime compensation as alleged above, Harris is entitled to liquidated damages in accordance with 29 U.S.C. § 216(b).

85.

As a result of the underpayment of overtime compensation as alleged above, Harris is entitled to her litigation costs, including her reasonable attorneys' fees in accordance with 29 U.S.C. § 216(b).

WHEREFORE, Harris respectfully prays:

1. That her claims be tried before a jury;

2. That she be awarded an amount to be determined at trial against Defendant in due but unpaid overtime compensation;

3.  That she be awarded an additional equal amount as liquidated damages;

4. That she be awarded pre-judgment interest on all amounts owed to the extent that liquidated damages are not awarded;

5. That she be awarded nominal damages;

6. That she be awarded costs of litigation, including her reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b); and

7. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

**DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC**

101 Marietta Street
Suite 2650
Atlanta, Georgia 30303
(404) 979-3150
(404) 979-3170 (f)
charlesbridgers@dcbflegal.com
benjamin@dcbflegal.com
matthew.herrington@dcbflegal.com

*/s/Charles R. Bridgers*
Charles R. Bridgers
Ga. Bar No. 080791

*/s/ Mitchell D. Benjamin*
Mitchell D. Benjamin
Ga. Bar No. 049888

*/s/ Matthew W. Herrington*
Matthew W. Herrington
Ga. Bar No. 275411

COUNSEL FOR PLAINTIFF